UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

NATALIE SANCHEZ,

                Plaintiff,

   - against -

S&P GLOBAL, INC., and CHRIS MIDGLEY
*in his individual and professional capacity*.

                Defendants.
------------------------------------------------------------X

Case No. 23 Civ. 576

**COMPLAINT**

      Plaintiff Natalie Sanchez hereby complains of Defendants S&P Global, Inc. (the "Company," or "S&P Global") and Chris Midgley (the "Individual Defendant"), upon personal knowledge, as well as information and belief, by alleging and averring as follows:

## NATURE OF THE CASE

      1.    This is a case about how a 34-year long female employee who fired by her employer shortly after accusing her boss of gawking at her breasts and buttocks in the workplace.

      2.    In fact, the employer in question, Defendant S&P Global – a leading provider of transparent and independent ratings, benchmarks analytics, and data to the capital and commodity markets worldwide and one of the 100 Best Corporate Citizens identified by Corporate Responsibility Magazine – allowed Plaintiff Natalie Sanchez to be treated like a sex object by her male boss.

      3.    Worse, when S&P Global learned that Plaintiff was being sexually harassed by her boss, it not only turned a blind eye to the trauma and devastation a woman in her position has to face but punished Plaintiff for engaging in protected activity by terminating her employment.

4. As a result of Defendants' unlawful conduct, Ms. Sanchez brings this action against Defendants S&P Global and her boss, Chris Midgley for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII"), the New York State Human Rights Law, New York State Executive Law, §§ 296, et seq. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107, et. seq. ("NYCHRL").

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 as it is based on claims under Title VII.

6. The Court has supplemental jurisdiction over Plaintiff's claims under state and local law pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as S&P Global resides within the Southern District of New York and a substantial part of the acts complained of herein occurred therein.

## ADMINISTRATIVE REQUIREMENTS

8. On or about August 17, 2021, Plaintiff filed a charge of discrimination related to the facts and allegations set forth herein with the Equal Employment Opportunity Commission ("EEOC").

9. The EEOC issued Plaintiff a Notice of Right to Sue on or about November 16, 2022. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

10. Plaintiff is an adult resident of the state of New York and worked at S&P Global from 1987 until November 2020.

11. At all times relevant hereto, Defendant S&P Global was and is a for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of New York and maintains its principal place of business at 55 Water Street, New York, New York 10041.

12. At all times relevant hereto, Plaintiff was an "employee" of S&P Global and S&P Global was an "employer" of Plaintiff pursuant to all applicable statutes.

13. At all times relevant hereto, Defendant Midgley was an employee of Defendant S&P Global, holding the position of Director of Analytics.

14. At all times relevant hereto, Defendant Midgley was Plaintiff's supervisor and had supervisory authority over Plaintiff.

15. At all times relevant hereto, Defendant Midgley had the authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment, qualifying as Plaintiff's employer under all applicable statutes.

## FACTUAL ALLEGATIONS

**I.     Plaintiff's Successful Career at S&P Global**

16. After graduating from the Secretarial Business Program at the Katharine Gibbs Secretarial School in 1987, Plaintiff began her career at McGraw-Hill, Inc. ("McGraw-Hill") as an Administrative Assistant.

17. Plaintiff then became a Global Administration Generalist at S&P Global, Platts Division, in 1998.

18. In 2002, Plaintiff was promoted to Executive Administrative Assistant. Plaintiff supported the President of Business Information Group, Harry Sachinis, and other top executives.

19. In July 2011, Plaintiff was promoted to Executive Assistant, and supported various senior executives at different times, some of which included (i) Managing Director, Mark Schwartz; (ii) Vice President of Channel and

3

Strategic Alliances, Marc Karstaedt; (iii) Chief Strategy Officer, Brian Casey; and (iv) Defendant Chris Midgley.

20. Plaintiff managed schedules, coordinated meetings, arranged travel, and prepared expense reports for all four senior executives.

21. Plaintiff consistently received positive year-end performance reviews. In 2018, Mr. Schwartz wrote that Plaintiff met his needs "with no major issues," and that the "office space management and associated support have been accomplished without problems."

22. In April 2020, Defendant Midgley wrote, "Natalie has had a great impact on the business in 2019 by making sure that the office move to Water Street went smoothly."

23. Midgley also praised Plaintiff as "flexible," "action oriented," and a "team player," and described Plaintiff as being "all about getting things done whether for Executives or in supporting the team."

24. Suffice it to say, throughout her 34 years with S&P Global, Plaintiff never received a bad performance evaluation.

## II. Plaintiff is Sexually Harassed by Mr. Midgley

25. During the Company's 2017 holiday party in New York City, Defendant Midgley, who is based in S&P Global's London office, appeared to be inebriated and stopped as he walked by Plaintiff as she talked with a group of people, rubbed Plaintiff's back, and whispered, "Great party."

26. Plaintiff immediately excused herself and went to the restroom to try and calm herself down.

27. Plaintiff had to actively avoid Defendant Midgley for the remainder of the night.

28. About four months later, in April 2018, Plaintiff was asked to start supporting exclusively Defendant Midgley.

29. In early-April 2019, during one of the few instances in which the two worked in physical proximity to one another in the New York City office, Defendant Midgley stared at Ms. Sanchez's buttocks as she walked away from him.

30. Then, the next time the two worked in physical proximity of one another in the New York office, in early March 2020 (before the office was shut down because of the COVID-19 pandemic), Defendant Midgley stared at Ms. Sanchez's breasts on multiple occasions.

31. Plaintiff complained about Mr. Midgley to S&P Global's HR department in May 2020.

32. Plaintiff explained to Director of People, Amanda Lamadrid, that Mr. Midgley made her feel "really uncomfortable," but that she had been afraid to come forward earlier for fear of losing her job. Plaintiff requested that she no longer support Mr. Midgley.

33. Ms. Lamadrid referred Plaintiff's complaint to the S&P Employee Relations team to conduct an "investigation."

34. Plaintiff's complaint was administered by Employee Relations Specialist, Belinda Palmer.

35. Ms. Palmer asked Plaintiff why it had taken her so long from when the sexual harassment first began to report Defendant Midgley's behavior. Plaintiff explained how rare it was for Plaintiff and Mr. Midgley to physically work together, but that each time they were together, Mr. Midgley would unwantedly stare at her breasts and/or her buttocks.

36. Each in person interaction Plaintiff had with Defendant Midgley was overwhelmed by an overt, highly uncomfortable, sexualized act.

5

37. Plaintiff also explained that the last act of sexual harassment occurred right before the shutdown caused by COVID-19, and it took her some time to get back into the mental headspace to lodge a formal complaint with HR.

38. Plaintiff explained how she was compelled to come forward as there was no telling what Defendant Midgley would do the next time they were back in person given his escalating harassing behavior.

39. Defendant Midgley denied any wrongdoing, specifically stating that he felt "sorry that [Plaintiff] felt that way," and that he thought Plaintiff was "just upset about the fact that she had not received a merit increase."

40. Whether or not Plaintiff received a modest bonus or raise had no bearing on her decision to lodge a complaint with HR. In fact, there were many years that Plaintiff did not receive a raise for whatever reason — a decision that she has always accepted in stride and without incident.

41. Plaintiff had worked for many other male executives throughout her time at S&P Global and had never experienced anything like how Midgley treated her.

42. In July 2020, Plaintiff was told that she had to continue working for her harasser Mr. Midgley while the Company looked for another role to place her into.

**III.   After Complaining about Being Sexually Harassed, S&P Global Retaliates by Firing Plaintiff**

43. In August 2020, S&P Global told Plaintiff that she had to continue directly supporting Mr. Midgley indefinitely purportedly because it could not find another role for her in the organization. Plaintiff had no choice but to continue to directly support her harasser lest she be without an income.

44. On November 9, 2020, S&P Global terminated Plaintiff's employment, claiming that her job had been "eliminated."

45. However, three similarly situated but far less tenured and experienced assistants who also supported operating committee members but who did not engage in protected activity were retained.

46. Plaintiff was considered a member of S&P Global's "operating committee," referred to as the "Executive Committee." As such, her role was far broader than that of a mere assistant, as she held significant leadership responsibilities.

47. Plaintiff was never told that she was having any performance issues and received only favorable reviews and bonuses.

48. Plaintiff's firing was retaliation for her engagement in protected activity, and was therefore unlawful.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## (Against S&P Global)

49. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

50. Based on the facts alleged herein, Defendants have engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of her gender/sex (female).

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

52. Accordingly, as a result of the unlawful conduct of S&P Global set forth herein, Plaintiff has been damaged and is entitled to maximum compensation available to her under the law, including, but not limited to, punitive damages.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
## (Against S&P Global)

53. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

54. Based on the facts alleged herein, S&P Global engaged in unlawful employment practices prohibited by Title VII by retaliating against Plaintiff for engaging in protected activity by complaining of sexual harassment and based on her gender/sex (female).

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

56. Accordingly, as a result of the conduct of S&P Global set forth herein, Plaintiff has been damaged and is entitled to maximum compensation available to her under this law, including, but not limited to, punitive damages.

## THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL
## (Against All Defendants)

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

58. New York State Executive Law § 296 states in pertinent part:

> 1(a). It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

59. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff with respect to the terms and conditions of her employment on the basis of her gender/sex (female), in violation of the New York State Human Rights Law.

60. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

61. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law including, but not limited to, punitive damages.

## FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL
## (Against All Defendants)

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

63. New York State Executive Law § 296 states in pertinent part:

> 7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified, or assisted in any proceeding under this article.

64. As described above, Defendants retaliated and/or discriminated against Plaintiff for engaging in protected activities pursuant to the NYHSRL, by unlawfully terminating her employment, in violation of the NYSHRL.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses; severe

emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

66. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law, including, but not limited, punitive damages.

### FIFTH CAUSE OF ACTION
### AIDING AND ABETTING UNDER THE NYSHRL
### (Against Individual Defendant Only)

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

68. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

69. Defendant Midgley engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory and retaliatory conduct against Plaintiff.

70. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

71. Accordingly, as a result of Defendant Midgley's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law, including, but not limited, punitive damages.

## SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL
## (Against All Defendants)

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

73. New York City Administrative Code § 8-107 provides that:

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

74. Defendants violated the NYCHRL by discriminating against her with respect to the terms and conditions of her employment because of her gender/sex (female), in violation of the New York City Human Rights Law.

75. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

76. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law, including, but not limited, punitive damages.

## SEVENTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL
## (Against All Defendants)

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

78. New York City Administrative Code § 8-107 provides that:

> 7. It shall be unlawful discriminatory practice: For an employer […] to discriminate against any person because such person has opposed any practices forbidden under this chapter […]

79. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff for engaging in protected activities pursuant to the NYCHRL, by unlawfully terminating Plaintiff's employment.

80. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

81. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law, including, but not limited, punitive damages.

**EIGHTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER NYCHRL**
**(Against Individual Defendant Only)**

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

83. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

84. Defendant Midgley engaged in unlawful discriminatory and retaliatory practices in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful and retaliatory conduct.

85. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses; severe

emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

86. Accordingly, as a result of Defendant Midgley's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law, including, but not limited, punitive damages.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited under federal, state, and local laws by discriminating and retaliating against Plaintiff on the basis of her gender/sex;

B. Awarding economic damages to Plaintiff;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

**JURY DEMAND**

    Plaintiff hereby demand a trial by jury on all issue of fact and damages stated herein.

Dated: January 23, 2023　　　　　　　　　　Respectfully submitted,
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　**FILIPPATOS PLLC**

　　　　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　　　Tanvir H. Rahman
　　　　　　　　　　　　　　　　　　　　　　199 Main Street, Suite 800
　　　　　　　　　　　　　　　　　　　　　　White Plains, New York 10601
　　　　　　　　　　　　　　　　　　　　　　T./F: 914.984.1111
　　　　　　　　　　　　　　　　　　　　　　trahman@filippatoslaw.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*