UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATALIE SANCHEZ,<br><br>        Plaintiff,<br><br>   -against-<br><br>S&P GLOBAL, INC.,<br><br>        Defendant. | 23-CV-576 (AS)<br><br>MEMORANDUM OPINION<br>AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

  Plaintiff Natalie Sanchez sues her former employer, S&P Global, for discrimination and retaliation under Title VII, New York State Human Rights Law (NYSHRL), and New York City Human Rights Law (NYCHRL). Dkt. 3. In 2020, S&P sent Sanchez a separation agreement that would release all these claims. Dkt. 33-6 ¶ 8. S&P claims that Sanchez signed and returned the agreement, but it can't find the executed copy. And Sanchez now says she never signed it. Nevertheless, she accepted over $123,000 (paid out in semi-monthly installments over the course of a year) and outplacement services from S&P under the agreement. Dkt. 33-1 at 137:14–139:5, 148:12–15, 188:7–14; Dkt. 33-10. S&P moves for summary judgment, arguing that Sanchez taking the cash and services (1) evidenced her intent to be bound by the agreement under the factors set forth in *Winston v. Mediafare Ent'mt Corp.*, 777 F.2d 78, 80–81 (2d Cir. 1985), (2) operates as a ratification of the agreement, or (3) gives rise to estoppel. For the following reasons, the motion will be DENIED without prejudice.

  First on the *Winston* factors and ratification: Sanchez claims that she never signed the separation agreement, and the agreement makes clear that if it isn't signed, it is "automatically" null and void. Dkt. 33-6 ¶ 4. This knocks out S&P's argument that the parties intended to be bound by the agreement even if it went unsigned. Courts apply the four *Winston* factors to determine "whether parties intended to be bound by a settlement agreement in the absence of a document executed by both sides." *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997). But where "there is a writing between the parties showing that [one party] did not intend to be bound [absent a signed agreement,] a court need look no further than the first factor." *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (quoting *RKG Holdings, Inc. v. Simon*, 182 F.3d 901, 901 (2d Cir. 1999)); *cf. Winston*, 777 F.2d at 80 (a key factor is "whether there has been an express reservation of the right not to be bound in the absence of a writing"). The separation agreement indicates that the parties did not intend to be bound absent a fully executed agreement, and so the *Winston* factors are no refuge to S&P here. Dkt. 33-6 at ¶¶ 2, 4, 5–6, 8–9.

  S&P's ratification argument also fails. Ratification applies only to *voidable* agreements—for example, an employee who releases her claims, but later says she was under duress when she

agreed to do so—not to contracts that are *void* because there was no agreement in the first place. *See* 1 Williston on Contracts § 1:20 (4th ed. 2023) ("[I]f a promise is void, it creates no legal obligation and the promisor is without power to ratify [the] promise."); *Leasing Serv. Corp. v. Vita Italian Rest., Inc.*, 566 N.Y.S.2d 796, 798 (3d Dep't 1991) (explaining that where there was no signed contract, "there was no contract capable of being ratified"). Construing the facts in the light most favorable to Sanchez, as the Court must do on summary judgment, there was no agreement and so no ratification either.

That leaves equitable estoppel. Courts have held that those who do "what amounts to a recognition or adoption of a contract … so as to affect or interfere with the relations … of the parties," are "equitably estopped from impeaching [the contract], although it was originally void or voidable." *Bernard v. Citibank, N.A.*, 151 N.Y.S.3d 87, 93 (2d Dep't 2021) (quoting *Rothschild v. Title Guar. & Trust Co.*, 204 N.Y. 458, 464 (N.Y. 1912)); *see Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (estopping party from denying its obligation under an unsigned agreement where party "knowingly accepted the benefits of the [a]greement"). The party who seeks to rely on estoppel must demonstrate that there was a "representation of fact" made "by either words or conduct," that the other party relied on the representation "reasonably without knowledge or means to learn the true state of affairs," and that "permitting the party making the representation to deny it would cause injury by virtue of the reliance." 4 Williston on Contracts § 8:3 (4th ed. 2023). "If those elements are present, an equitable estoppel is appropriate, but if any of them is missing, an equitable estoppel will not be applied." *Id.*

S&P could not identify a single case applying estoppel in the context of a release of the kind of claims at issue, alleging unlawful discrimination and retaliation. There is reason to think that at least for a release of federal discrimination claims, estoppel might apply differently or not at all. After all, to determine whether a release of federal discrimination claims was "knowing and voluntary," the Second Circuit does not apply "ordinary contract principles" but a "more stringent" inquiry. *Bormann v. AT & T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–38 (2d Cir. 1998) (explaining that the same *Bormann* inquiry applies to determine whether a release of Title VII claims is knowing and voluntary).

But even if standard-issue estoppel were to apply in this case, the present record is not clear-cut in S&P's favor. Applying the estoppel factors, the "representation" S&P relies on is Sanchez's acceptance of the terms of the separation agreement, including her release of all claims. S&P argues that the representation was made primarily through her "conduct," by Sanchez accepting payments and other services due under the agreement. S&P says it "reasonably relied" on Sanchez's conduct and was "injured" when it paid her $123,000 under a void agreement. That is all straightforward, but the devil is in the details. As stated above, S&P must demonstrate that it "relied reasonably" on Sanchez's conduct. The summary judgment record leaves some doubt about that, especially when the facts are construed in the light most favorable to Sanchez.

First off, while S&P insists that Sanchez did in fact sign the agreement—a disputed issue for trial—it frustrated its own ability to confirm this fact by shredding the originals of employees' separation agreements after they had been received, scanned, and uploaded to the company's electronic system. Dkt. 44-3 ¶ 8. If there was computer or human error in uploading an agreement, it would be lost. That isn't enough to deprive S&P of the benefits of estoppel, but there's more. S&P was apparently aware that it couldn't find the signed agreement just a couple of months after it was negotiated. The record shows that an S&P employee looked for Sanchez's signed agreement and was unable to find it. Dkt. 39-1 at 6 ("The agreement wasn't uploaded to her WD profile so I can't see the amount . . . ."). At that point, S&P could have asked Sanchez point-blank whether she signed the agreement and requested her to furnish the company with a copy. It could have advised Sanchez that unless she did so, the company would make no further payments to her and that she would have to pay back what she had received. The record does not reflect that S&P did either.

Three months later, Sanchez's lawyer reached out to S&P. Dkt. 39-4. The summary judgment record doesn't contain the parties' entire discussions, but Sanchez's lawyer did tell S&P that the separation agreement's release was "void under New York law." Dkt. 39-4 at 1. So as of that time, S&P not only couldn't find the signed agreement, but it knew that Sanchez took the position that the release was "void." Once again, S&P could have taken this opportunity to figure out from Sanchez whether the agreement had been executed, or it could have stopped paying Sanchez given her stated position that the release was void. The only thing that is reflected in the record is that S&P kept paying Sanchez. Even after Sanchez said the agreement was void, S&P paid her more than $50,000. Dkt. 39-2 at 37–66. This is not a factual record supporting summary judgment on estoppel grounds, especially where there is a release of federal discrimination claims at issue.

But to be clear, the denial of summary judgment does not mean that S&P has no recourse with respect to the separation agreement. For one thing, S&P can still try to prove at trial that Sanchez signed it. And even if it can't do that, S&P may still be able to recover the money it gave Sanchez. At a hearing on this motion, Sanchez's counsel agreed that the money S&P paid for the release can be offset from any recovery she may get in this case. Additionally, S&P has indicated that it may countersue Sanchez for return of the contract proceeds. That means that while Sanchez could win on her underlying claims, she could also lose and be required to pay back $123,000.

For these reasons, S&P's summary judgment motion will be DENIED. That denial will be without prejudice because discovery in this case hasn't been completed. Before reassignment of this case to me, Judge Failla ordered targeted discovery on whether there was an enforceable separation agreement. So discovery on other issues hasn't happened yet. If further facts are revealed in discovery that bear on the issues raised on the present motion, S&P can raise them in the context of its post-discovery summary judgment motion, or at trial as appropriate.

## CONCLUSION

S&P's motion for summary judgment is DENIED WITHOUT PREJUDICE. The Clerk of Court is directed to terminate the motion at Dkt. 30.

S&P will answer the complaint on or before December 15, 2023. The parties will complete all fact and expert discovery on or before March 5, 2024. Any summary judgment motions are due on or before March 12, 2024. A final pretrial conference will be held on May 6, 2023, with a jury trial to commence on May 13, 2024.

SO ORDERED.

Dated: December 4, 2023
       New York, New York

                                        ARUN SUBRAMANIAN
                                        United States District Judge